THOMPSON *v.* WYNNE.

[90 South. 482.  No. 22249.]

1. MORTGAGES. *Payee of note extending time beyond date of trust deed without consideration is not bound thereby.*

Where the payee in a note secured by a deed of trust on real estate, as a mere matter of grace, without any new or further consideration, at the request of a payor therein, extends the time of payment beyond the due date of said note, such agreement of extension is not binding on the payee; therefore, notwithstanding same, the payee may proceed to foreclose such deed of trust before the expiration of such extended date of payment.

2. MORTGAGES. *Held, that beneficiary under power in deed of trust could appoint a substituted trustee after discontinuing.foreclosure proceedings.*

Where the trustee in a deed of trust, at the request of the *cestui que trust,* is proceeding to foreclose the same in the manner provided in such deed of trust, and the *cestui que trust,* whether for any well-founded ground or not, become dissatisfied with the steps of foreclosure taken by said trustee, and has such trustee to discontinue the foreclosure proceedings, and appoints a substituted trustee in his place, such appointment is valid under a power in the deed of trust authorizing the *cestui que trust* to appoint another trustee in the place of the one named in the deed of trust or any succeeding trustee at any time he may desire.

APPEAL from chancery court of Bolivar county.

HON. G. EDW. WILLIAMS, Chancellor.

Bill by Edna Wynne against C. P. Thompson. Decree in favor of plaintiff, and defendant appeals. Reversed and remanded.

*Shands, Elmore & Causey,* for appellant.

In the case at bar appellee claims to know the amount that is due yet does not pay this into court. An itemized statement was furnished to the husband and agent of the appellee in advance of the day of sale of all accounts claimed by the defendant and an offer on the part of the defendant to accept a less amount than the amount that was actually owing. The chancellor, however, predicated his finding upon a supposed lack of power in the holder of this indebtedness to appoint a substituted trustee. Considering the language of the contract between the parties, this startling announcement is one that, if taken seriously, would cause considerable alarm.

The provision of the deed of trust, which was quoted in the statement of fact above, I now repeat, and is in the following language: "The owner or owners of the above indebtedness may, at any time he or they may desire, appoint another trustee in the place and stead of the trustee herein named, or any succeeding trustee."

It was conceded on the argument that this language is as broad as it is possible to be; but the chancellor conceived the idea that such a provision was contrary to public policy and would jeopardize the interest of the debtors.

There is no contention here that there was any fraud perpetrated by Thompson upon Mrs. Wynne; but, on the other hand, it appears affirmatively from the record that the deed of trust was entirely prepared by Frank Wynne, husband and agent of Mrs. Wynne, Frank Wynne being himself a practicing lawyer in Bolivar County, Mississippi, and after being prepared and executed by Mrs. Wynne, was delivered to Dr. Thompson, he not having seen the paper until after its execution and delivery to him.

Jones in his work on Mortgages, at page 452, in discussing the substitution of trustee, uses this language: "The trust deed often makes provision for the filling of any vacancy that may occur in the office of trustee; and if the person who is to execute the trust and the event upon

which he may execute it are distinctly described he may act, and his acts will be valid."

This contract entered into between the parties gives to the owner of the indebtedness the power to appoint another person at any time he may see fit. The appointment is itself the strongest possible evidence of his desire or whim to appoint. 1 Devlin on Real Estate (3 Ed.), par. 387, says: "The deed may itself provide for the method of appointing a new trustee in which case application to a court becomes unnecessary." And cases cited thereunder hold that where a deed of trust does provide for such appointment the terms of the deed of trust are to be followed.

Our court in the case of *Guion* v. *Pickett*, 42 Miss. 77; *Clark* v. *Wilson*, 53 Miss. 128; *McNeill* v. *Lee*, 79 Miss, 459, and in numerous other cases, unnecessary to mention, lay down the rule that where the deed of trust itself undertakes to provide the method or the circumstances under which a trustee may be appointed, that the provisions of the contract must be followed unless in conflict with some expressed provision of law.

The only statutory requirement in Mississippi for the appointment of a trustee, or the only act of the legislature which, in any wise, impairs the right of contract as to the appointment of a trustee, is the statute which requires such appointment to be in writing, duly acknowledged and filed for record before the publication of the first notice of sale.

Even this statute would not be effective against a contract between adult parties, were it not for the provision in the statute that a sale by a trustee should not pass title unless the substitution was therein made. The chancellor was of opinion that there was some kind of public policy that controlled in the matter of the execution and foreclosure of deeds of trust.

In this holding he is in conflict with this honorable court. The parties might have provided that only a one-eyed man might be appointed trustee, and if they had so contracted nobody except a one-eyed man could have foreclosed.

They might have provided for the appointment of a substituted trustee upon the happening of any contingency that they saw fit to provide for.

The grantor in this deed of trust, by her own husband and agent in preparing the deed of trust, provided that the grantee therein might appoint a substituted trustee at any time that he saw fit. The grantee acted upon this power given to him and did so appoint, we respectfully submit that there is no authority holding that such right of contract is in contravention of any public policy of the State of Mississippi.

As this record shows that all of the facts are disclosed by this record; and that all parties who know anything about the matter were called and sworn as witnesses to tell the truth the whole truth and nothing but the truth, it is apparent that all of the facts connected with this case are now disclosed by this record. We, therefore, contend that this court ought, in order to save delay and additional expense, reverse the decree of the chancellor in overruling the motion to dissolve, and should enter a decree in this court dissolving the injunction and awarding to appellant C. P. Thompson, statutory damages of five percent, because of the wrongful suing out of this injunction.

*Roberts & Hallam,* for appellee.

1. The complainant in the lower court contended, and the chancellor upheld her contention, that the substitution of Causey as trustee in the deed of trust in question in the place of Jones was illegal and unauthorized, notwithstanding the provision in the deed of trust that the owners or owner of the above indebtedness may at any time he or they may desire appoint another trustee in the place or stead of the trustee herein named, or any succeeding trustee. The iniquity of such a provision and its availability as a weapon of abuse are readily seen, and are amply demonstrated in the case at bar. It violates

every rule laid down by this court heretofore on the right of a *cestui que trust* to substitute a trustee. It places the borrower at the mercy of the money lender, and opens wide the doors to dishonesty and fraud. It tends to injustice and oppresssion. If this is true, the stipulation is against the public policy of the State of Mississippi and is, therefore, void.

In *Tarbell* v. *Rutland R. R. Co.*, 73 Vt. 347, it is said: "The general rule of law is stated to be that whatever tends to injustice or oppression, restraint of liberty and natural and legal right, or to the obstruction of justice, or to the violation of a statute, and whatever is against good morals, when made the subject of a contract, is against public policy and void. It is said that they are not contracts, but unlawful agreements, which are void in their inception."

In *Peoples Bank* v. *Dalton,* 2 Okla. 476, it is said, that public policy is the principle under which freedom of contract or public policy is the principle under which freedom of contract or private dealing is restricted by law for the good of the community. In *Lampton's Will,* 53 N. Y. Supp. 531, the court said: "Perhaps the most concise and satisfactory definition of the term is that public policy, is a policy which must be established either by law, by courts, or by general consent."

We submit that it has always been the policy of this state to protect the weak and needy, to extend the all powerful arm of the law as a barrier to oppression and injustice; and in line with that policy this court has on numerous occasions expressed itself with reference to the substitution of a trustee in place of the trustee named in the instrument creating the trust, following the general rule of law on the subject.

In 39 Cyc., p. 273, speaking of the occasion for the appointment of a substitute trustee, the rule is thus stated: "Since a power of appointment can only be exercised upon the happening of the contingency expressed in the grant, the instrument granting the power should express plainly

the cases in which a new trustee may be appointed, and should embrace every event that can render such appointment necessary, such as the neglect or refusal of the trustee to act, his death, absence from the country, wish to retire from the office, or incapacity or unfitness to discharge its duties."

So strict has this court been in construing powers granted under trust deeds that, in *Guion* v. *Pickett,* 42 Miss. 80, it held that the death of the trustee named originally was not the equivalent of a refusal or neglect of the trustee to act so as to authorize the appointment of a substitute.

Speaking of the power to appoint a substitute trustee, this court, in *Clark* v. *Wilson,* 53 Miss. 128, said: "When the power is granted, it should designate the person by whom, as well as the event or circumstances upon which it may be exerted. If a person not named, or distinctly described by his office or character, makes the appointment, or if the circumstances do not warrant the new appointment, or there be serious irregularity in executing the power, in all these cases the acts done by the appointee will be invalid; and the original trustee will not be exonerated or discharged." *McNeil* v. *Lee,* 79 Miss. 459; Hill on Trustees (4 Ed.), 189, 190; *Guion* v. *Pickett,* 42 Miss. 77, 80; 2 Perry on Trusts (4 Ed.), section 602 (g).

These cases, for the protection of the majority who have to borrow money against the minority who lend it, definitely establish the policy of this state that a power which grants the right to substitute a trustee in a deed of trust, must designate clearly the particular event upon the happenings of which the power may be exercised, else such grant is ineffectual for any purpose, and certainly a state of mind on the part of the *cestui que trust.* A desire is not such an event as these decisions have reference to. The stipulation in question, therefore, violates the public policy of this state and is void.

In the case at bar the original trustee (as in *McNeil* v. *Lee, supra*) was in the actual execution of the trust, had caused notice to be published in the newspaper and posted

at the courthouse door, when, without notice to him, and
when no vacancy had occurred in his office, the defendant
Causey was by the appellant appointed substituted trustee.
No good reason is shown why he should have been sup-
planted.   Parties executing an instrument of this kind
agree on a named trustee because they have confidence in
him, because he knows or believes that he will act in good
faith and fairly as between the persons interested, and
the widest range for fraud and oppression and injustice is
given if the *cestui que trust* can discard the trustee named,
without notice to the grantor in the deed of trust, for some
mere whim of his, whether in good faith or *mala fide,* and .
substitute another who may be wholly unknown to the debt-
or and one upon whom he would never have agreed in the
first instance.   Why should Jones have been removed, when
he was in the very act of executing the trust, and Causey
substituted?   It was attempted to be shown, and was earn-
estly urged at the hearing, that Jones was proceeding il-
legally because the notice of sale given by him was in-
valid for not describing the county in which the land ad-
vertised to be sold was situated, and because it was claimed
that no notice was posted at the courthouse door.   But it
is shown affirmatively that notice was posted at the court-
house door, and it clearly appears from the decisions of
this court that the notice was sufficient.   Thompson and
his attorneys did not take the trouble to consult Jones,
trustee, as to his actions in the premises, and the latter
had no notice that anything was claimed to be wrong until
Thompson telephoned him the day before the receipt by
Jones of the letter shown at page 33 of the record that
another trustee had been submitted in his place.   If they
had taken the trouble to investigate, they would have con-
sulted Jones, who would have referred them to Wynne,
who would have referred them to Clark, who would have
told them that the notice had been posted.   And if they
had examined the following cases, they would have dis-
covered that the notice was a legal and valid one.   *Wilkin-
son* v. *Webb,* 75 Miss. 403; *Hanna* v. *Renfro,* 32 Miss. 125;

*Peacher* v. *Strauss,* 47 Miss. 353; *Gex* v. *Dill,* 86 Miss. 191; *Lewis* v. *Seibles,* 65 Miss. 251; *Ladnier* v. *Ladnier,* 75 Miss. 780; *Yellowly* v. *Beardsley,* 76 Miss. 613.

Recurring to the provision in the deed of trust in question, to-wit: "The owner or owners of the above indebtedness may at any time he or they may desire appoint another trustee in the place and stead of the trustee herein named or any succeeding trustee."

We submit that the intention of the parties at last controls whatever their language may have been, even though the court may not agree with us about the invalidity of this provision and in construing this provision the court is bound to hold that it was not the intention of the grantor that the *cestui que trust* should thereby be given the power to remove the named trustee and appoint another in his place unless some exigency demanding such action should arise.

2. The court will observe from the evidence in the record that Dr. Thompson agreed to extend the time of payment of the note in question for ninety days after the 23d day of January, 1921. This is testified to by Mr. Wynne and the chancellor's decree finds his testimony to be true. But it is said that this agreement was made on Sunday, and further that there was no consideration for it. The evidence, however, shows that although the agreement was made on Sunday, it was ratified afterward by the conduct of the appellant, and, if his testimony is to be believed, by letter, except that he says that in the letter he changed the time of extension from three months after the date of the conference at Greenville to three months after the due date of the note, January 1, 1921. But Wynne testified that he received no such letter from Dr. Thompson, and the chancellor believed him. That a contract made on Sunday may be ratified, see 25 R. C. L., p., 1434, sec. 27, where it is said that such rule is sustained by the weight of authority. Besides this, it is not clear that the making of a contract such as the contract of extension is such as is prohibited by the laws of this state. See 25 R. C. L., p.

1430, sec. 21 and cases cited in notes. One is not allowed, under our statute, sec. 1366, Code of 1906 (sec. 1102, Hemingway's Code), as amended by chapter 25 of the Laws of 1917, to labor at his own, or any other trade, calling or business on Sunday. This language would not seen to prohibit the making of an isolated contract as in the case at bar. *Miller* v. *Lynch,* 38 Miss. 344.

That an agreement to pay interest is a valid consideration for an extension of time of payment, see note to A. & E. Ann. Cas., p. 442. Besides this, the release of the right by Thompson to exact payment and the surrender by Mrs. Wynne of the right to pay, constitute in themselves a valid consideration for the three months extension. The appellant, therefore, had no right to cause a foreclosure of the deed of trust until the expiration of the last day of the three months period, which was April 23, the day the property was last advertised for sale. In the decree rendered, the court below so held.

'Anderson, J., delivered the opinion of the court.

Appellee, Mrs. Edna Wynne, filed her bill in the chancery court of the second district of Bolivar county to enjoin appellant, C. P. Thompson, from foreclosing a deed of trust held by him upon her land. The appellant was proceeding to foreclose by advertisement and sale through a trustee. On the filing of the bill an injunction was issued and served in accordance with its prayer. Appellant answered the bill and made a motion to dissolve the injunction, which was heard by the trial court on bill, answer and oral testimony taken at the hearing, and a decree was rendered by the court overruling appellant's motion, from which he was granted an appeal to this court to settle the principles of the cause.

The bill alleges as one ground of injunction that the indebtedness secured by the deed of trust was not due at the time of the attempted foreclosure. The note secured by the deed of trust was due by its terms on January 1,

1921. It is alleged in the bill that by agreement between the appellant and appellee entered into on January 23, 1921, the time of payment of the note was extended three months, which therefore made the extended date of payment April 23, 1921. The husband of appellee, who is a lawyer, and whom the testimony shows attended to this entire matter for his wife from beginning to end, testified that there was no consideration for the extension of time, except the mere promise of the appellant. Later on in his testimony, evidently only intending to draw what he considered a legal conclusion from the fact of extension, he stated that the consideration for it was the interest which would accrue to appellant on the note during the additional time. But the evidence in the case is overwhelming that there was no consideration for the extension; that neither the interest which would accrue during the extended period was the consideration, nor was there any other consideration of any kind whatever; on the contrary, that it was a mere matter of grace to the appellee; that appellant was indebted to Harbison, cashier of the Citizens' Savings Bank of Greenville, which indebtedness was soon falling due, and agreed to the extension of appellee's note upon the condition alone that he could get his (appellant's) said note extended for the same length of time; that accordingly the parties met with Harbison, by previous arrangement, in Greenville, and there it was agreed by Harbison that appellant should have three months' extension on his note, and, in turn, appellant agreed to give appellee three months' extension. There is no real conflict in the evidence on this point. Therefore the contention that the injunction in this case was rightfully sued out, because the indebtedness secured by the deed of trust which was sought to be foreclosed was not due, is without any substantial foundation.

A further ground of injunction averred in the bill is that the proceedings to foreclose were unauthorized and illegal, for the reason that Causey, the substituted trustee undertaking the foreclosure, had not been legally ap-

pointed in the place of Jones, the trustee named in the deed of trust. The power set out in the deed of trust under which the substitution was made is in this language: "The owner or owners of the above indebtedness may, at any time he or they may desire, appoint another trustee in the place and stead of the trustee herein named, or any succeeding trustee."

The facts out of which this question arises are that appellant first requested Jones, the trustee named in the deed of trust, to proceed to foreclose in the manner provided in the deed of trust. Accordingly Jones advertised the sale in a newspaper and claimed to have posted one sale notice on the bulletin board of the courthouse. While Jones' advertisement of the sale was in progress appellant was informed that for certain reasons (unnecessary to notice) such advertisement was illegal, and that a sale thereunder would be void, and, furthermore, that the trustee, Jones, had procured the services of the husband of appellee, who was a lawyer, to prepare the sale notice, which appellee's husband admitted in his testimony was the fact. Whether there was any real ground for appellant's apprehension that the foreclosure proceedings were illegal it is unnecessary to decide; it is sufficient to say that appellant in good faith sought the advice of a lawyer, following whose advice he substituted Causey as trustee in the place of Jones and had the latter discontinued as trustee and the former to proceed with the foreclosure, and while so doing the injunction in this cause was issued and served. It is argued on behalf of appellee that the substitution of Causey as trustee was void; that such a power given in a deed of trust is to be strictly construed against its exercise; that the substitution could not take place except upon the happening of the precise event specified in the deed of trust; and to support that principle *McNeil* v. *Lee,* 79 Miss. 455, 30 So. 821; *Guion* v. *Pickett,* 42 Miss. 80, and 2 Perry on Trusts (4 Ed.), section 602(g), are relied on.

There is no question as to the soundness of the principle referred to; but, applying it with full force to power con-

tained in the deed of trust here involved, it is clear that the rule was not violated. The power contained in the deed of trust simply states that the appellant should have the power to appoint another trustee in the place of the trustee named, or any succeeding trustee, at any time he might see fit. Language could not be broader. The parties so contracted, and why should they not be bound by their contract? We do not mean (and it is not necessary to decide the question) that such a broad power could be arbitrarily and unjustly used; that it could be used as an instrument of fraud and oppression. There is no such question involved under the facts of this case. It will be time enough to decide that question when it arises. We have here a deed of trust containing this broad power of appointment of a substituted trustee, and an exercise of that power by the *cestui que trust* in perfect good faith. We are of opinion, under the facts of this case, that the substitution is unassailable.

The deed of trust in question plainly provides what it shall stand as security, for there is no necessity of going into that question. We find no merit in the other grounds for injunction argued, which we do not deem of sufficient importance to treat specially.

*Reversed and remanded.*