**GROTA v. HOLCOMBE et al.**

No. 10503.

Court of Civil Appeals of Texas. Galveston.

Aug. 1, 1936.

Rehearing Denied Oct. 15, 1936.

302

James E. Kilday, Homer Mabry, and Geo. N. Lusch, all of Houston, for appellant.

R. R. Lewis, W. M. Holland, George D. Neal, Walter E. Boyd, and G. W. Eddy, all of Houston, for appellees.

PLEASANTS, Chief Justice.

This is a suit by appellant against the members of the civil service commission of the city of Houston for mandamus to compel them to give appellant a hearing on the question of whether his discharge from the service of the city of Houston in the position of warrant officer for the corporation court was lawful under the civil service provisions of the city charter and the rules and regulations of the civil service commission.

The petition also seeks to obtain an injunction against the mayor of the city, restraining him from interfering with the action of the civil service commission in according plaintiff his right to a hearing on the question of his reinstatement. Plaintiff also makes the city of Houston a party defendant and asks judgment against it for recovery of the salary due him during the time he has been unlawfully prevented from performing the duties of his office or employment. The city council and the officers of the city having duties in connection with the payment of money by the city are also made parties defendant, and appropriate writs are asked requiring each of them to perform such duties in event plaintiff obtains judgment of his claim of salary due him by the defendant city.

The petition is lengthy and argumentative, and we shall only state the substance of what we regard as its material allegations.

The home-rule amendment to the city charter was adopted by the city in 1913. Thereafter, on April 4, 1914, the city council provided for the organization and operation of a civil service commission, and defined its duties, authority, and powers. This ordinance took effect from its final adoption on April 14, 1914. The civil service commission on May 1, 1914, promulgated its first civil service rules, which were adopted by ordinance of the city council on May 1, 1914, and these rules have remained in effect continuously since their adoption by ordinance of the city council.

"Section 1 of Rule 1 of the Civil Service Rules, in keeping with the letter, spirit and intent of the Civil Service Amendment, classifies all officers and places of employment in the City of Houston, except those exempted by the terms of the Civil Service Amendment, into Civil Service classes, grades and groups. Each class includes persons in the same 'general line and character of work.' Within each class there are grades, each grade including positions 'having duties of substantially similar authority, importance and responsibility.' With each grade there are groups, each group being similar as to the 'compensation and length of service.'

"Section 2 of Rule 1 provides that the nine succeeding sections of Rule 1 shall specify Civil Service classes, grades and groups in the Classified Civil Service of the City of Houston, and, as well, the title and limits of compensation for each class and grade in the Classified Civil Service of the City.

"Section 6 of Rule 1 classifies as 'Class D' and grades and groups the 'Police Serv-

ice' of the City of Houston. 'Class D,' or the 'Police Service,' is divided into four grades, known as 'Grade 1,' 'Grade 2,' 'Grade 3,' and 'Grade 4.' * * *

"Grade 3 includes 'positions of Warrant Officer, 1st grade sergeant, Lieutenant of Police, Captain of Police, Supervisor of Identification.'

"Grade 4 includes captains of detectives, clerk of the corporation court, chief of detectives, and deputy superintendents of police.

"Plaintiff's petition is, therefore, in Class D, Grade 3; but if plaintiff be mistaken in any respect about such classification and grading, he was nevertheless a Civil Service employee because his position has and is not excluded from the provisions of the Civil Service Amendment and the Ordinances, Rules and Regulations passed in pursuance thereof, and plaintiff says that all city officers and employees not so excluded are Civil Service employees."

The petition then alleges that plaintiff was appointed to the office or position of warrant officer for the corporation court on March 24, 1930; that such selection and his appointment was made in the manner required by the city charter, the rules of the civil service commission, and the ordinances and resolutions of the city council; that at the time of his appointment, plaintiff was given an oral civil service examination by Civil Service Director F. A. Kesseler, Corporation Court Judge Ralph Fowler, and the clerk of that court, Mr. B. F. Fredericks, under section 23 of the civil service commission's regulation IV, and the civil service commission in that manner and otherwise satisfied itself about plaintiff's qualification, character, and ability to hold the position of warrant officer.

(Section 23 of regulation IV, above referred to, as shown by the exhibit attached to the petition, is as follows: "Oral examinations when ordered by the Secretary with the approval of the Commission shall be conducted by not less than two persons, one of which shall be the Secretary, or an examiner delegated by him, the others to be selected from the department to which the applicant desires entrance.")

"Plaintiff took the oath of office required by law and gave the bond required by law, which was approved and accepted by the City; and plaintiff was lawfully and regularly inducted into and lawfully qualified for such office or position, and then, without objection by the City and with its distinct approval, began performance of the duties thereof, and without objection and with the approval of the City continued so to perform them, remaining continuously qualified for such office or position and remaining continuously under such a bond and oath of office until he was unlawfully dismissed in the manner herein set forth, on or about May 1, 1933; and during all of such period of time he was paid his wages or salary for holding and performing the duties of such office or position; and during all of such time, money for paying to plaintiff such wages or salary was regularly and properly appropriated by the City Council acting by, through and under ordinances regularly and properly passed and approved; and, since May 1, 1933, the money with which to pay such wages or salary incident to plaintiff's said office or position has been regularly and properly appropriated by the City Council acting by, through and under ordinances which were regularly and properly passed and approved each year between the years 1930 to 1935, inclusive."

Plaintiff further alleged that on April 27, 1933, soon after the appellee mayor was elected mayor of the city of Houston, the following letter was written by the city secretary to Mr. B. F. Fredericks, acting judge of the corporation court:

"Dear Sir:

"Acting upon authority of Mayor Holcombe, please advise the following employees of your Court that their services will not be required by the City, effective April 29, 1933, with pay to May 1, 1933:

"Ed Looney
"George Stacey
"Charlie Graham
"Ed Grata
"Mrs. Saide Iiams

"We regret very much that it becomes necessary to dispense with the services of these employees, but due to the present economic conditions and the fact that this department can be operated efficiently with a reduced force, this action is unavoidable.

"Very truly yours,
"Sterling Hogan,
"City Secretary."

That upon the receipt of this letter Fredericks advised plaintiff that he was dismissed, and plaintiff has not since that time been permitted to perform the duties of his position; that the statement that

plaintiff was dismissed because of economic conditions is not true, and that the only reason for plaintiff's dismissal was the fact that he voted for the opponent of the mayor in the campaign for the term of the mayor's office beginning in April, 1933; that neither the mayor nor Fredericks had authority to dismiss plaintiff, the jurisdiction to exercise such authority being only in the civil service commission. It is further alleged that the dismissal of plaintiff was illegal because under the charter of the city of Houston when it becomes necessary for economical reasons to dismiss civil service employees, such dismissal should be made in such order as to apply first to the employees last placed in the service of the city; that plaintiff had been longer upon the list of classified civil service employees than the persons appointed by the mayor to perform the duties of the position from which plaintiff was so wrongfully dismissed; that the dismissals made by Fredericks in response to the letter before set out were only of persons who voted against appellee mayor in the preceding election.

The prayer of the petition is: First, that a writ of mandamus be issued against the members of the civil service commission to enter an order reinstating plaintiff in his position of warrant officer for the corporation court, to replace his name on the list of classified civil service employees of the city, and on the pay roll at the proper and lawful salary.

Plaintiff further prays for writ of injunction against appellee mayor restraining him from interfering with the members of the commission in the performance of any acts authorized by the city charter and the ordinances of the city, necessary to be done to reinstate plaintiff in his said position and to replace his name on the pay roll. He further prays that plaintiff be given a money judgment for his loss of salary from May 1, 1933, until the date of his reinstatement.

In the alternative, plaintiff prays for writ of mandamus to the members of the civil service commission commanding them to proceed with the hearing and trial in plaintiff's appeal now pending before them, if and when a charge of misconduct justifying a dismissal is filed against him.

"That this court fix a time limit of ten days or some other reasonable number of days from and after the judgment of this court shall have become final and effective in which a charge accusation, respecting plaintiff's conduct anterior to the filing of such charge, may be lodged against the plaintiff before said Civil Service Commission; and it is prayed that any charge respecting plaintiff's conduct anterior to the filing of such charge which may be filed subsequent to said time limit, be adjudged by this court for the purpose of construing this court's judgment and fixing plaintiff's rights thereunder as being of no effect and as being null and void; and as justifying plaintiff's immediate reinstatement under the same writs as those mentioned in the first alternative of this prayer.

"That a writ of injunction issue, restraining the defendant, Mayor Holcombe, his assistants, attorneys, and agents, helpers and co-workers from interfering with said Commission in giving a fair, lawful and impartial trial, decision and hearing in the appeal to said Commission of the case of E. F. Grota, discharged Warrant Officer in the Police Department or Corporation Court of the City of Houston.

"For the purpose of meeting the contingency, upon the second alternative, which will arise if and when the Civil Service Commission shall have found against the plaintiff, the plaintiff now prays that, in that contingency, he be given judgment by this court against the City of Houston for wages he would have earned but for his unauthorized dismissal on or about May 1, 1933, covering the period of time between May 1, 1933, and the time the bona fide charge shall have been lodged against the plaintiff by the head of plaintiff's department before the Civil Service Commission—such wages to be calculated at the rate of One Hundred Forty and 00/100 Dollars ($140.00) per month between May 1, 1933, and the date of the filing of such bona fide charge before the Civil Service Commission, plus interest at the lawful rate of each month's salary from the day it fell due until actually paid."

Plaintiff further prays that in event the civil service commission upon a hearing held by it shall find in favor of plaintiff, that the court issue its writ of mandamus to the members of the commission to reinstate the plaintiff in his position of warrant officer of the corporation court of the city of Houston, and to replace plaintiff's name upon the list of classified civil service employees of the city, and also upon the city pay roll at the lawful salary provided for such employee. The prayer for a money

judgment before made is repeated, as are the prayers for injunction and mandamus against the appellee mayor and other officers of the city to insure the payment of the judgment to which he may be entitled. He further prays for equity and general relief.

Omitting its redundant portions, the foregoing is a sufficient statement of the material petitions contained in the prayer of plaintiff for relief upon the facts stated in his pleadings.

Defendants answered this petition by a general demurrer and general denial, and by numerous special exceptions. The trial court sustained the general demurrer and all of the special exceptions, and ordered plaintiff's suit dismissed.

■ Upon this state of the record it is unnecessary for us to set out and discuss the sixty-eight special exceptions sustained by the trial court. The general demurrer having been sustained, and plaintiff having been given no opportunity to amend his petition to meet any of the special exceptions, the judgment must be reversed unless the general demurrer was properly sustained.

We agree with appellant that the controlling questions presented by this appeal were decided adversely to appellees in the case of Ellis v. Holcombe et al. (Tex.Civ. App.) 69 S.W.(2d) 449. The Supreme Court having refused a writ of error in the Ellis Case, the holdings of this court in that case will be followed in deciding the questions presented by this appeal.

The learned trial judge, in an opinion delivered by him sustaining appellee's general demurrer, held in substance that the civil service amendment to the charter of the city of Houston did not abolish the police department of the city, and the action of the city council in attempting to recreate that department "was an idle gesture and unnecessary thing." It is unquestionably true that the amendment did not abolish the police department, but it is equally apparent from the language of the amendment attached as an exhibit to plaintiff's petition that it changed the method of selection and removal of officers and employees of that department who were subject to the application of the rules and regulations made by the civil service commission and thereafter adopted by ordinance of the city council.

Section 1 of the amendment creates the office of civil service commission, fixes the qualifications for its members, and prescribes the method for its organization.

Section 2 provides that the commission, with the approval of the city council, shall make the necessary rules for the proper conduct of its business which may be changed or amended by the city council. This section expressly excepts a number of the officers of the city from the application of the civil service rules and regulations.

It then provides as follows:

"The Civil Service Commission shall also make provision for open, competitive and free examination as to the fitness in regard to classified services for an eligibility list from which vacancies shall be filled, for a period of not less than twelve months' probation before being placed upon the classified list of appointees or employees and for promotion on the basis of merit, experience and record. * * *

"The City Council may by ordinance confer upon the Commission such further and additional rights and duties as may be deemed necessary to enforce and carry out the principles of this Article."

Sections 3 and 4 of this article are as follows:

"Any employee may be suspended by the head of the department under which he is employed and thereupon his salary shall cease. The officer making the order of suspension shall forthwith file with the Civil Service Commission a statement of the suspension and his reasons therefor. Within ten days after such suspension the employee so suspended may, if he desires, file an appeal with the Civil Service Commission, who shall hold an inquiry within ten days thereafter, and said Commission shall make a decision within ten days after the hearing whether the employee shall be permanently dismissed from the service of the city or reinstated in his employment. All such hearings shall be public; the decisions of the Commission shall be final. In order for an employee to file an appeal as hereinbefore provided it shall only be necessary for him to file a written statement showing in what department he was employed, when and for what he was suspended and a statement by him denying the truth of the matters charged in the statement of the officer so suspending him, and that he desires an appeal from the decision of said officer suspending him, which statement of appeal shall be signed and sworn to by the employee so suspend-

cd. In all hearings on appeal from the order of suspension by the Civil Service Commission, the judgment of the officer suspending the employee shall be presumed to be correct; the burden of disproving the charges made against the employee that resulted in his removal shall be upon the employee."

"The Civil Service Commission, with the approval of the City Council, shall have power at all times to make proper rules and regulations for the government of the employees under Civil Service, and when such rules and regulations have been made it shall cause such rules to be published in some newspaper in the City of Houston; provided, that no rules and regulations shall ever be adopted which will permit the appointment or employment of any person without good character, or unfit and incompetent, or to prevent the removal or discharge of any appointee or employee for want of fitness, moral character or the failure or refusal to properly discharge the duties of his appointment or employment. (As amended 1915.)"

It seems clear to us that if the conclusions of this court and the Supreme Court in the Ellis Case, supra, are sound, and we have no doubt of their soundness, the trial court erred in sustaining the general demurrer to plaintiff's petition.

■ If the facts alleged in plaintiff's petition are true, and as against a general demurrer they must be presumed true, we think the plaintiff is entitled to his writ of mandamus to require the civil service commission to hear and pass upon the merits of his appeal from the order of the corporation court dismissing him from the position in the police department of warrant officer for the corporation court. In event the commission should find that plaintiff was wrongfully dismissed, he should be reinstated in the office from which he was wrongfully removed, and also placed upon the classified list of civil service employees.

■ Plaintiff, if found to have been wrongfully dismissed, should recover of the city the salary for the office from which he was so wrongfully removed.

■ These conclusions necessarily include the holdings that the constitutional provision (article 16, § 30) as to the length of the term of any office, where not otherwise fixed, shall be two years, is not violated by the civil service amendment to the charter of the city of Houston, and that appellee's contention that the city is not liable for the wrongful acts of its officers or agents in the performance of a governmental function has no application to facts of this case as alleged in plaintiff's petition.

Other questions presented by the special exceptions need not be passed upon.

For the reason indicated the judgment is reversed and the cause remanded.

Reversed and remanded.